UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SALAH ANANI, Individually and on                    :
Behalf of All Other Persons Similarly Situated,     :
                                                    :        Case No. 09-cv-05535 (ADS)(AKT)
                          Plaintiffs,               :
                                                    :
            -against-                               :
                                                    :
CVS RX SERVICES, INC.,                              :
                                                    :
                          Defendant.                :
----------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**


Jeffrey A. Klafter
Seth R. Lesser
Fran L. Rudich
KLAFTER OLSEN & LESSER LLP
2 International Drive, Suite 350
Rye Brook, NY 10573
(914) 934-9200 Telephone
(914) 934-9220 Facsimile

Bradley I. Berger
BERGER ATTORNEY, P.C.
321 Broadway
New York, New York 10007
(212) 571-1900 Telephone

Attorneys for Plaintiff

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

COUNTER STATEMENT OF THE RELEVANT FACTS .......................................... 3

ARGUMENT .......................................................................................................... 5

    A.    THE STANDARDS FOR REVIEW. .............................................................. 5

    B.    MR. ANANI, WHO WAS, EFFECTIVELY PAID ON AN HOURLY BASIS
           AND IN AMOUNTS THAT FAR EXCEEDED HIS BASE SALARY, WAS
           NOT A SALARIED EMPLOYEE ................................................................ 7

    C.    THE SALARY BASIS IS A PREREQUISITE FOR APPLYING THE HIGHLY
           COMPENSATED INDIVIDUAL EXEMPTION CONTAINED IN  541.601 ............. 17

    D.    CVS HAS AGREED TO WITHDRAW ITS CONTENTION RELATING TO
           THE STATUTE OF LIMITATIONS. ............................................................. 18

    E.    PLAINTIFF DOES NOT DISPUTE THAT HIS NEW YORK LABOR LAW
           CLAIMS SHOULD BE DISMISSED. ........................................................... 18

CONCLUSION ...................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases:**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); ................................................... 6

*Arriaga v. Florida Pac. Farms, L.L.C.*, 305 F.3d 1228 (11th Cir. 2002) .................................... 11

*Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217 (2d Cir. 2002) ..................................... 6

*Borda v. Sandusky Ltd.*, 166 Ohio App. 3d 318, 850 N.E.2d 766 (2006) .............................. 12, 14

*Brock v. The Claridge Hotel and Casino,* 846 F.2d 180 (3d Cir. 1988) .......................... 11, 12, 14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................. 5

*D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006) ................................................. 5

*Davis v. J. P. Morgan Chase & Co*., 587 F.3d 529 (2d Cir. 2009) ................................................. 7

*Folkes v. N.Y. Coll. of Osteopathic Med.*, 214 F. Supp. 2d 273 (E.D.N.Y. 2002) ........................ 6

*Holcomb v. Iona Coll*., 521 F.3d 130 (2d Cir. 2008) ............................................................. 5

*In re Novartis Wage and Hour Litigation*, 611 F.3d 141 (2d Cir. 2010) ............................ 3, 7, 16

*In re Wal-Mart Stores, Inc.*, 395 F.3d 1177 (10th Cir. 2005) ....................................................... 11

*Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611 (2d Cir. 1991) ....................................................... 7

*Reiseck v. Universal Communications of Miami. Inc.*, 591 F.3d 101 (2d Cir. 2010) .................... 6

*Roe v. City of Waterbury*, 542 F.3d 31 (2d Cir. 2008) ................................................................ 6

*Turner v. Ferguson*, 149 F.3d 821 (8th Cir. 1998) ...................................................................... 6

*Wright v. Aargo Security Servs., Inc.*, 2001 U.S. Dist. LEXIS 882 (S.D.N.Y. 2001) .......... *passim*

*Zheng v. Liberty Apparel Co., Inc.*, 2010 U.S. LEXIS 16478 (2d Cir. Aug. 10, 2010) ................ 7

**Statutes:**

29 C.F.R. § 514.100 .............................................................................................................. 18

29 C.F.R. § 541.118(a) .............................................................................................. 8, 14, 15

29 C.F.R. § 514.118(b) .................................................................................................. 9, 14, 15

29 C.F.R. § 541.300(a)(1) ........................................................................................................ 8

29 C.F.R. § 541.601(b)(1) ........................................................................................................ 8

29 C.F.R. § 541.604 ................................................................................................................ 10

29 C.F.R. § 541.604(a) ........................................................................................................ 9, 14

29 C.F.R. § 541.604(b) .............................................................................................. 10, 14, 15

29 C.F.R. § 601 ................................................................................................................ 17, 18

29 C.F.R. § 601(b)(1) ............................................................................................................ 17

29 C.F.R. § 601(c) ................................................................................................................. 18

29 C.F.R. § 604(a) ................................................................................................................. 14

29 C.F.R. § 790.17(d) ........................................................................................................... 11

29 U.S.C. § 202(a) ................................................................................................................... 6

29 U.S.C. § 207(a)(1) .......................................................................................................... 6, 7

29 U.S.C. § 213(a)(1) .......................................................................................................... 6, 7

29 U.S.C. § 216(b) .......................................................................................................... *passim*

**Other Authorities:**

1996 DOLWH LEXIS 28 (July 26, 1996) ............................................................................ 13

1998 DOLWH LEXIS 99 (Dec. 30, 1998) ........................................................................... 13

1999 DOLWH LEXIS 98 (Sept. 3, 1999) ............................................................................. 13

**Rules:**

Fed.R.Civ.P. 56 ........................................................................................................................ 5

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Salah Anani submits this memorandum of law in opposition to the motion for summary judgment of Defendant CVS Rx Services, Inc. ("CVS").  This memorandum is accompanied by Plaintiff's Counterstatement of Material Facts and Response to Defendant's Statement of Material Facts ("Counterstatement of Facts") and by the Declaration of Seth R. Lesser ("Lesser Decl.").

Nowhere in CVS's nineteen page brief is there any acknowledgement of the amounts that Mr. Anani was actually paid by CVS.  The reason is simple:  those amounts were so disproportional to his "base" salary as to render that "base" effectually nugatory.  On average, his biweekly paychecks exceeded that "base" by 70%.  In other words,, week in and week out he was paid 70% more than the supposed base.  The following chart sets forth how Mr. Anani's actual weekly pay compared to his base, the "guaranteed" amount:

| Time Period | Weekly Base Salary – The "Guarantee" | Average Actual Weekly Pay Received | Percentage of Mr. Anani's Weekly Base He Was Actually Paid |
|---|---|---|---|
| 12/18/2006 to 4/14/2007 | $2,454.32 | $4,244.86 | 172% |
| 4/15/2007 to 7/28/07 | $2,564.32 | $4,779.50 | 186% |
| 7/29/07 to 7/27/08 | $2,679.60 | $4,150.99 | 154% |
| 7/28/08 to 7/20/09 | $2,800.16 | $4,884.41 | 173% |

Plaintiffs' Rule 56 Statement at pages 8 ¶9 - 12 ¶12.

In neither common parlance, nor within the meaning of the FLSA itself, was Mr. Anani paid on a "salary" basis.  Rather, the pay he received each and every week was calculated pursuant to simple arithmetic:  by multiplying the number of hours he worked by his hourly rate. *See, e.g.*, Plaintiffs' Rule 56 Statement at page 7 ¶5; *see also* discussion at pages 3-5, below.

1

CVS addresses the actual amount of Mr. Anani's pay obliquely and only at page 16 of its brief, where it writes that the relationship of his actual pay to his guaranteed pay is a "factor to be considered" under the FLSA.  While it plainly is <u>the</u> primary factor to be considered under the pertinent law, what is significant is that this statement effectively gives the game away because even if this test is only one factor to be considered, a triable issue of fact exists as to whether the unreasonable relationship between what Mr. Anani was paid and what CVS claims was his "base salary" effectively negated its claim that Plaintiff was a "salaried" employee.

As shown below, the manner by which CVS paid Mr. Anani violated the FLSA's requirement – set forth in regulation, Department of Law Opinion Letters and case law – that while an employer can pay some additional compensation to an employee over a guaranteed amount, and still take advantage of an exemption under the "salary basis," the guarantee must bear a <u>reasonable relationship</u> to the employee's overall compensation.  See pages 10-17, below. Indeed, according to the United States Department of Labor, the "reasonable relationship" test requires that the "weekly guarantee [be] roughly equivalent to the employee's total earnings at the hourly rate for his normal workweek."  Plainly, there was no such reasonable relationship, here, much less a "rough equivalence."  As a result, at a minimum, a triable issue of fact is presented as to whether the relationship was or was not "reasonable" or "roughly equivalent" and CVS's motion must fail.

No less important, as also set forth below, is CVS's argument that, if it cannot pay pharmacists like Mr. Anani on an hourly-determined basis -- no matter how in excess of their "base" -- then pharmacists themselves will suffer.  The problem with this argument is that the FLSA's core purpose is to incentivize employers to hire <u>more</u> workers by requiring the payment of time and a half overtime to those workers who work more than forty hours.  CVS has attempted to circumvent this primary purpose of the FLSA by getting pharmacists like Mr. Anani

to work longer hours and avoid hiring additional pharmacists.  However, as the Second Circuit reiterated in one of its most recent FLSA cases, the FLSA's overtime requirements were "meant to apply financial pressure to 'spread employment to avoid the extra wage' and to assure workers 'additional pay to compensate them for the burden of a workweek beyond the hours fixed in the act.'"  *In re Novartis Wage and Hour Litigation*, 611 F.3d 141 at * 22 (quoting *Davis v. J. P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2d Cir. 2009)).  CVS violated this well-established precept in the manner by which it compensated Mr. Anani, and as such, it is liable to him for failing to pay him time and a half overtime.

<u>**COUNTER STATEMENT OF THE RELEVANT FACTS**</u>

CVS's pay system for pharmacists works by CVS establishing a pay "Rate Code" for each pharmacists which is an hourly "Compensation Rate" for an expected number of hours to be worked, which in Mr. Anani's case, was always 44 hours per week.  *See* Lesser Decl. Ex. 3 (Hay Dep. Ex. 6) (screenshots from CVS's People Soft record database); Lesser Decl. Ex. 2 (Hay Dep.) at 21-23.  CVS then converts this "Compensation Rate" into an yearly equivalent "annual salary", by multiplying 52 weeks times 44 hours a week.  *Id.*  The Compensation Rate for Mr. Anani, during the time period at issue (December 18, 2006 through July 20, 2009, the date on which he left CVS), ranged from $55.87/hour to $63.64/hour.  *See* Defendants' Rule 56 Statement at ¶ 11.

CVS's records show that Mr. Anani was paid with an hourly compensation rate in mind. In CVS's own documents, the Compensation Rate is referred to as a "per hour" rate for the base salary, and "NAHRLY."  Lesser Decl. Ex. 2 (Hay Dep.) at 24.  Further emphasizing that CVS itself believed that Mr. Anani was paid on an hourly basis is the fact that his "Frequency" of pay is referred to as "H," Lesser Decl. Ex. 3 (Hay Dep. Ex. 6), obviously an hourly classification. Except in specific instances of yearly bonuses (referred to in Defendant's records as PIP), Mr.

Anani's pay was always expressed as a function of the number of hours he worked, consisting of
(a) his hourly Compensation Rate times his total hours worked plus (b) premium pay of $6/hour
for any hours over 44 per week (referred to in Defendant's records as PR5), and (c) less
frequently, either premium pay for night or holiday work (referred to in Defendant's records as
HOL or RNR hours) or sick or accrued holiday hours (referred to in Defendant's records as SCK
and HOB) which were paid at his hourly Compensation Rate.  Lesser Decl. Ex. 4 (Hay Dep. Ex.
7); Lesser Decl. Ex. 2 (Hay Dep.) at 48-59.

That Mr. Anani was paid as a function of the hours he worked can be most easily seen by
examining his paychecks.  CVS's paychecks to Mr. Anani were in the form of biweekly
"Earnings Statements."  On these paychecks, Plaintiff's total pay is a referred to as a function of
his "Rate" times "Hours" he worked during that pay period.  *See* Lesser Decl. Exs. 5-6.

This can be appreciated by comparing the two back-to-back two-week pay periods ending
March 7, 2009 and March 21, 2009.  During the second pay period, Plaintiff worked exactly one
hour less than he did in the immediate prior period.  The difference between Mr. Anani's pay
between these two periods equaled exactly his hourly rate, plus his $6 premium for hours over
44.  Lesser Decl. Exs. 5-6; Lesser Decl. Ex. 2 (Hay Dep.) at 38-40, 53-55.  Thus, in his paycheck
for the two weeks ending March 7, 2009, Mr. Anani worked 141.00 hours (the "hours" figure set
out on the line denominated "Regular" under "Earnings).  *See* Lesser Decl. Ex. 5.  For those 141
hours he was paid at a Compensation Rate of $63.64/hour, for a total of $8,973.24 (141 x
$63.64).  In addition, for those hours above 88 that he worked (53 such hours), he was also paid
an additional $6/hour, or $318 (53 x $6).  Thus, his total pay (as set out in the grayed line that is
marked "Total") was $9,291.24.  The following paycheck, for a two week period in which he
worked exactly one less hour totaled $4,195.37, which is one less hour at his Compensation and
Premium rates.  See Lesser Decl. Ex. 5.

4

In short, Mr. Anani's compensation varied from biweekly paycheck to biweekly paycheck depending upon the number of hours he worked.  In fact, there is just one pay period out of the three relevant years in which he received his "salary" amount.  This is shown at pages 8 ¶9 - 12 ¶12 of Plaintiff's Rule 56 Statement.  As those pages further show, his pay rate bore but little resemblance to his weekly salary guarantee, but were entirely reflective of the amount of hours he worked each pay period, as is summarized on an average basis in the chart set forth on page 1, above.

## ARGUMENT

**A.     THE STANDARDS FOR REVIEW.**

On its motion, CVS faces two burdens:  first, a moving party's burden under Rule 56 for summary judgment and, second, an employer's burden of proof to support its claim that an employee is exempt from overtime under the FLSA.

Under Rule 56, summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56 (c).  The burden is on the moving party to demonstrate the absence of a material factual question, and in making this determination, the court must view all facts "in the light most favorable" to the nonmoving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).  "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied."  *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).  Likewise, "[i]f there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable."  *Folkes v. N.Y. Coll. of Osteopathic Med.*, 214 F. Supp. 2d 273, 279 (E.D.N.Y. 2002) (citing *Holt v. KMI-Cont'l,*

*Inc.*, 95 F.3d 123, 128 (2d Cir. 1996). "Only disputes over material facts – 'facts that might affect the outcome of the suit under the governing law' -- will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see also Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).

In the context of a FLSA claim, where, as here, the employer is seeking summary judgment on the question of exempt status, the employer's burden is particularly high. *See Turner v. Ferguson*, 149 F.3d 821, 824 (8th Cir. 1998) ("summary judgments in favor of parties who have the burden of proof are rare, and rightly so"). This is due to the FLSA's establishing the ultimate burden of proof on the merits to lie with the employer, a result of the core purposes for which Congress enacted the statute.

The FLSA was enacted in 1938 to combat "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). "[N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

The FLSA provides several exemptions to this general rule. 29 U.S.C. § 213(a)(1). Since the FLSA is a remedial law, these exemptions to the overtime pay requirement are "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (quotation omitted); *Reiseck v. Universal Communications of Miami. Inc.*, 591 F.3d 101, 104 (2d Cir. 2010). Accordingly, the burden of proving that its pharmacists fall within an exemption is on CVS, the employer, and any exception – such as the learned professional or highly paid employee exemptions upon which

CVS is relying – are to be construed against CVS. *In re Novartis Wage and Hour Litigation*, 611 F.3d 141, 150 (2d Cir. 2010).

Moreover, as a series of recent decisions from the Court of Appeals has emphasized, it is difficult for an employer to obtain summary judgment on a FLSA claim. In several recent cases, the Circuit Court has reversed summary judgment decisions in favor of employers. *See Novartis, supra* (vacating summary judgment in favor of employer of an outside salesmen under the administrative exemptions); *Davis v. J. P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2d Cir. 2009) (reversing summary judgment on applicability of administrative exemption as to loan underwriters). In the last such decision, *Zheng v. Liberty Apparel Co., Inc.*, No. 09-4890, 2010 U.S. LEXIS 16478 (2d Cir. Aug. 10, 2010), the Court of Appeals emphasized: "FLSA claims typically involve complex mixed questions of fact and law . . . ." and 'mixed questions [of law and fact] are 'especially well-suited for jury determination . . . .'" Plaintiff submits, for the reasons mentioned below, that this rule applies equally here.

**B.  MR. ANANI, WHO WAS, EFFECTIVELY PAID ON AN HOURLY BASIS AND IN AMOUNTS THAT FAR EXCEEDED HIS BASE SALARY, WAS NOT A SALARIED EMPLOYEE**

The Fair Labor Standards Act requires employers to pay employees time-and-a-half for overtime hours worked unless the employee meets the criteria of being classified as "exempt" from those requirements. 29 U.S.C. § 207(a)(1) (requiring employers to compensate employees on a time-and-a-half basis for each hour they work in excess of the usual forty hour workweek); 29 U.S.C. § 213(a)(1) (exempting, inter alia, executives, managers and professionals from overtime pay requirements); *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991). CVS here asserts that Mr. Anani was exempt from time and a half overtime compensation under two exemptions – the learned professional exemption and the highly compensated individual exemption. In order to meet either of these exemptions, the employer must meet two sets of

requirements – a duties (or pay) test <u>and</u> a salary test, the latter of which requires the employee to have been paid on a "salary basis." *See* 29 C.F.R. §§ 541.300(a)(1) (professional exemption); 541.601(b)(1) (highly compensated employee exemption).

Plaintiff does not dispute that he meets the duties test for the professional exemption and was paid in excess of $100,000 per year for the highly compensated exemption.  Plaintiff disputes, however, that he was paid on a salary basis.

To be paid on a salary basis, there are certain prerequisites that must be met, which are set forth in 29 C.F.R. § 541.118(a), which provides, in pertinent part:

> An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a pre-determined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

The issue in this case is whether CVS has been paying its pharmacists on a salary, not an hourly basis.  The burden is on <u>CVS</u> to show that Mr. Anani has been paid on a salary, not an hourly basis.  Under the FLSA, it is the "employer's burden to demonstrate its entitlement to a given FLSA exemption, and because the Act is a remedial statute, its exemptions are construed narrowly against the employer."  *Wright v. Aargo Security Servs., Inc.*, 2001 U.S. Dist. LEXIS 882 at *5 (S.D.N.Y. Feb. 2, 2001) (citing *Martin v. Malcolm Pirnie, Inc*., 949 F.2d 611, 614 (2d Cir. 1991); *Dambreville v. City of Boston*, 945 F. Supp. 384, 391 (D. Mass. 1996)).

In simplest terms, there is no question whatsoever that Mr. Anani was paid on an hourly and not a salary basis.  Mr. Anani did not receive a "predetermined amount" in his paychecks – rather his compensation varied from biweekly paycheck to biweekly paycheck entirely depending on the number of hours he worked.  As noted (page 5, above), this is graphically set out in Plaintiffs' Rule 56 Statement at pages 8 ¶9 - 12 ¶12.  It is also captured by the two pay

periods from March 2009 discussed at pages 4-5, above: the only difference between the two paychecks was that in one two week period he worked one more week and for that period he was paid his regular rate plus his "bonus" amount for that extra hour.  Mr. Anani was therefore paid as a function of his hours worked – *i.e.*, he was an "hourly" employee within the plain sense of the term.  His compensation varied from week to week depending upon the number of hours he worked.  *See* Exhibit 2 to Lesser Decl. (Hay Dep. Ex. 7; pay registry run of Mr. Anani's pay, and other bonus checks).  In plain language, no one would say that Mr. Anani was a "salaried" employee.  Mr. Anani was an "hourly" employee and this should be the end of the analysis.

CVS, nonetheless, argues, based upon 29 C.F.R. § 541.604(a) that Mr. Anani was a salaried employee.  CVS's argument is that Mr. Anani was guaranteed an "annual salary" and that it was a floor amount encompassed within the amounts that he received and accordingly the portion of the annual salary within each of his paychecks was "a pre-determined amount constituting … part of his compensation" even though his actual pay was well above the salary amount.  The fact that Mr. Anani invariably earned more – and usually well more (70% more on average) – than what CVS's terms his "Weekly Base Salary" is supposedly permissible because "salary may consist of a predetermined amount constituting all or part of the employee's compensation," then "additional compensation besides the salary is inconsistent with the salary basis of payment."  29 C.F.R. § 514.118(b).  In general, "[a]pplying this regulation, courts have consistently held that an employee's receipt of additional amounts, including overtime, above a predetermined base compensation does not destroy the employee's otherwise valid salary status." *Wright v. Aargo Security Servs., Inc.*, 2001 U.S. Dist. LEXIS 882 at *16 (S.D.N.Y. Feb. 2, 2001) (citations omitted).

The exception of being able to pay above a base, however, cannot swallow the rule that the primary mode of pay has to be salaried, not hourly:  in other words, the situation we have in this case where the predetermined base bears little or no resemblance to what the employee actually was compensated.  Judge Haight has well-stated the point:

> Despite the general permissibility under the salary test of additional compensation beyond the guaranteed minimum, employers can encounter statutory difficulty when the employee's predetermined base pay is so far below his total compensation as to make the base pay's status as a salary merely an illusion.

*Id.* at *17.  That is why there is an additional regulation immediately following subsection (a) of 29 C.F.R. § 541.604 contained in subsection (b) which makes it clear that one cannot – as CVS has to be arguing here – pay any amounts of additional compensation (which, of course, have to be "above" the base) and yet claim the worker still to be "salaried."  The DOL in 29 C.F.R. § 541.604(b) sets forth what is known as the "reasonable relationship" test, and also one that under FLSA interpretation has to be construed *in favor of the employee* (*see* citations at pages 6-7, above), here, Mr. Anani:

> (b) An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned. The reasonable relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek. Thus, for example, an exempt employee guaranteed compensation of at least $500 for any week in which the employee performs any work, and who normally works four or five shifts each week, may be paid $150 per shift without violating the salary basis requirement. The reasonable relationship requirement applies only if the employee's pay is computed on an hourly, daily or shift basis. It does not apply, for example, to an exempt store manager paid a guaranteed salary of $650 per week who also receives a commission of one-half percent of all sales in the store or five percent of the store's profits, which in some weeks may total as much as, or even more than, the guaranteed salary.

The Department of Labor, whose opinion letters are entitled to "great weight", *see* 29 C.F.R. § 790.17(d) (the DOL considers its opinion letter to constitute rulings); *In re Wal-Mart Stores, Inc.*, 395 F.3d 1177, 1184 (10th Cir. 2005) ("Given their provenance and legal effect, these opinion letters are entitled to great weight when they interpret the DOL's own … regulations."); *Arriaga v. Florida Pac. Farms, L.L.C.*, 305 F.3d 1228, 1238 (11th Cir. 2002) (stating that opinion letters, although not dispositive, may not be disregarded), has further explained what "reasonable relationship" requires:

> the guaranteed salary must bear a reasonable relationship to the employee's actual weekly compensation, calculated on an hourly basis. This reasonable relationship requirement is satisfied if the weekly guarantee is roughly equivalent to the employee's total earnings at the hourly rate for his normal workweek.  Thus, if the guarantee is roughly equivalent to the employee's normal weekly pay, payment for additional hours may be made on an hourly basis.

*Id.* at *18 (Opinion Letter dated July 26, 1996, Wage and Hour Manual (BNA) 99:8058-8059).

There appear to be three cases that address the "reasonable relationship test."  While CVS cites various other cases to supposedly support its position that its "system" has been approved by courts, not a single of the cases it cites at CVS Mem. 7-8 and 9-10 involves anything more than the proposition that one can pay, even on an hourly basis, sometimes beyond the guaranteed base, and certainly none of them stand for the proposition that a person can be paid excessively and disproportionately over that base.  As to the three relevant cases, even though CVS tries to go through a fine set of criteria to distinguish the facts and ultimate dispensations of the three cases (*see* CVS Mem. at 12-16), it cannot gainsay their statement of the law respecting reasonable relationship nor the ultimate holdings, as those are relevant here.

11

In *Brock v. The Claridge Hotel and Casino,* 846 F.2d 180, 187 (3d Cir. 1988), the Third Circuit examined the compensation provided to various casino employees and concluded that the salary test was not satisfied by a compensation scheme in which employees were paid by the hour even though they received a weekly minimum guaranteed "salary" of $ 250, where weekly salaries varied tremendously and in exact correlation with the hours employees worked.  Further, as the need to pay the "guaranteed" minimum rarely arose because the hourly wages were so high (and, even then may not have been paid).  While there were other points raised and addressed, the Court looked to the pay received and the "guarantee" to address the reasonable relationship test.  CVS's contention that it is different from the casino in *Brock* because it always paid the guarantee only underlines the manner in which the present case is stronger than *Brock* – the only reason CVS always paid the guarantee is because what Mr. Anani earned was so disproportionally more than the guarantee.

Likewise, in *Wright v. Argo*, Judge Haight also adopted the "reasonable relationship" test, which CVS ignores.  While he concluded that the proportionality test was met under the "peculiar" facts present in that case, there, unlike here, the amount of the additional compensation over his base was (apparently) less than half of the employee's weekly pay – whereas, in Mr. Anani's case, it was well over fifty percent.  Additionally, Judge Haight was facing a most, as he stated, "peculiar practice" involving "bogus checks" of which no evidence was introduced and it certainly seems that his decision was driven by somewhat of a "pox on both your houses" conclusion that split the rulings between the two parties – he ruled in the employers favor on the salary basis issue but in favor of the employee on the duties test.

Finally, in *Borda v. Sandusky Ltd.*, 166 Ohio App. 3d 318, 850 N.E.2d 766, 770 (2006), the Ohio Appellate Court held that where employees received a guaranteed weekly salary and additional hourly compensation and the guaranteed weekly earnings "only" amounted to 80% of

total weekly compensation, the salary test was not met and overtime was owed.  While there were other additional points that to which the court referred, the 80% number – a number <u>lower</u> than for Mr. Anani – was a plain holding of the court.

Aside from these cases, ignored by CVS, is that when the DOL has provided advice to employers as how to address the possibility of additional compensation, stated that "we caution you that there must be a reasonable relationship between the hourly rate, the regular or normal working hours and the amount of the weekly guarantee.  The 'reasonable relationship' test will be met if the weekly guarantee is roughly equivalent to the employee's earnings at the assigned hourly rate for his normal workweek."  DOL Opinion Letter, 1999 DOLWH LEXIS 98 (Sept. 3, 1999); *see also*, *e.g.*, DOL Opinion Letter, 1996 DOLWH LEXIS 28 (July 26, 1996) ("This reasonable relationship requirement is satisfied if the weekly guarantee is roughly equivalent to the employee's total earnings at the hourly rate for his normal workweek. Thus, if the guarantee is roughly equivalent to the employee's normal weekly pay, payment for additional hours may be made on an hourly basis.").  In DOL Opinion Letter, 1998 DOLWH LEXIS 99 (Dec. 30, 1998), for instance, even though employers were guaranteed to be paid at least a $250 weekly minimum salary for any week in which they worked, they were also to be paid a proportion, in addition, of the work billed to paying clients.  Reiterating that "the guaranteed salary must bear a 'reasonable relationship' to the employee's actual weekly compensation, calculated on an hourly basis" which 'reasonable relationship' requirement is satisfied if the weekly guarantee is roughly equivalent to the employee's total earnings at the hourly rate for his or her normal workweek," the DOL concluded that the proposed plan did not meet the reasonable basis test notwithstanding the core point that CVS is arguing to this Court – that the required weekly minimum was going to be met and everything else was to be paid in addition.

13

Plaintiff submits that his guaranteed salary bore no reasonable relationship to his actual weekly compensation.  At no time was the "guarantee" "roughly equivalent" to his "normal weekly pay" as the chart set out at page 1, above, shows.  CVS can offer <u>no</u> contrary authority whatever to the foregoing and, as noted, while it debates the exact facts in each case, it cannot gainsay that no court has ever held that the "reasonable relationship"/"roughly equivalent" test is not the governing law.  In fact, CVS literally ignores the "roughly equivalent" test altogether.

Instead, CVS argues that the actual amount paid is not the criteria of what constitutes a "reasonable relationship" and that it is "but one factor among several to consider" (CVS Mem. 16).  One must ask, however, what other factors could really matter?  The point of the "reasonably relationship" test and 29 C.F.R. 541.604(b) is to make sure that one cannot effectively circumvent 29 C.F.R. 29 C.F.R. §§ 541.118(a) and 604(a) by creating a regime where individuals (like Mr. Anani) are ostensibly "salaried" employees but they invariably receive well more than their salary because they work more hours but yet also do not receive time and a half overtime pay.  In fact, the list of criteria that CVS wants the Court to consider as factors supporting its interpretation, such as "weekly base pay was always greater than the statutory minimum of $455 per week", or that "Plaintiff was entitled to his base salary in any week in which he worked one hour." (CVS Mem. 16), are essentially a repetition of the necessary elements for meeting 29 C.F.R. § 541.118(a) itself.  They, therefore, cannot also be factors implicated by determining when 541.118(a) meets its limiting rule contained in 541.604(b).  Accordingly, one does not even need to get to 541.604(b) if the 541.118(a) salaried basis prerequisites are not met.  And while CVS tries to pull these attributes out of the *Brock*, *Wright* and *Borda* cases, those courts advert to these "factors" to address the totality of whether the employees were salaried/hourly (*i.e.*, within the 541.118(a) determination) and it was the total pay compared to the bases is what was looked at for the 541.118(b) determinations.

14

In fact, while CVS oddly accuses Plaintiff of trying to ignore 541.604(a) and says time and again that it "always" paid the guarantee, the critical point is that CVS would effectively eviscerate 541.604(b) because if a person who routinely is paid in excess of his "guarantee" and whose compensation well exceeds that "guarantee" were to meet the reasonable relationship test, then it would be hard to imagine someone who does not.  If paying well more than the base always proves that the paying the base satisfies the salary test, then 541.118(b) is rendered nugatory.

Indeed, it is fair to say that – even giving CVS its argument that the 541.118(a) elements are "factors" for a 118(b) analysis (and Plaintiffs do not so concede) – the overriding factor to determine "reasonable relationship" has to be actual, ultimate compensation.  And since even CVS admits that this is a "factor to consider", then, plainly, summary judgment would be here inappropriate.  As the Second Circuit has emphasized, making such application of law to fact determination under the FLSA is for a jury to decide.  *See* page 7, above.  It would be plain error to decide a question of a reasonable relationship here.  In fact, and although this is not presently before the Court, Plaintiff would point out that because there will be a spectrum of other pharmacists at CVS who received pay well in excess of their "weekly base pay", that determination should be done on a consolidated basis in a single proceeding to obtain a single consistent rule of adjudication, which is one of the many reasons that this Court, ultimately, should provide for conditional certification of an FLSA class of CVS pharmacists.  That way, a jury decides what constitutes a "reasonable relationship" and do it once, rather than have it presented *seriatim* in individual cases that could lead to disparate results.

Finally, CVS's last response on the "reasonable relationship" is that Plaintiff's (supposedly) "strange interpretation of the FLSA loses sight of the purpose of the statute – to protect low paid workers" because Plaintiff's theory (allegedly) "would incentivize employers to

eliminate or dramatically reduce the potential incentive additional compensation paid to employees like Plaintiff."  CVS Mem. 16.  Notwithstanding CVS's fox-guarding-the-chicken-coop piety for Mr. Anani (who, for what it is worth, is now employed by another national retail chain, one that <u>does</u> pay him time and a half overtime), CVS misses the core point of the FLSA.

Far from being limited to "protect low-paid workers" (CVS Mem. at 16), the FLSA actually has an overriding purpose that sometimes might cause workers to get employed less hours.  Indeed, the Second Circuit so recognized that this year in its *Novartis* decision where it began its discussion of the purposes of the FLSA's time and a half overtime requirement by writing "the overtime requirements of the FLSA were meant to apply financial pressure to 'spread employment to avoid the extra wage' and to assure workers 'additional pay to compensate them for the burden of a workweek beyond the hours fixed in the act.'"  *In re Novartis Wage and Hour Litigation*, 2010 U.S. App. 13708 at *22 (quoting *Davis v. J. P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2d Cir. 2009)).  Whether CVS pharmacists will be better off when they receive a full time and a half overtime (as compared to what they presently get) is not at issue here – that will depend on how CVS may decide to do its math after this case.  What is clear is that when a company decides not to pay time and half extra wages to its employees who work more than 40 hours a week and does not so pay them, it should be subject to the FLSA's liability provisions.  The FLSA's point was to compel the CVSs of the world to hire more workers, not to work its existing workers double time.  If, as here, CVS choose to make them work (almost) double time, then the price to CVS for FLSA compliance was to pay them time and half overtime.  Mr. Anani was not so paid, and, ultimately, no matter how one interprets what "reasonable relationship" means, it patently is not met here nor can be argued to have been met to a summary judgment standard.

**C.    THE SALARY BASIS IS A PREREQUISITE FOR APPLYING THE HIGHLY COMPENSATED INDIVIDUAL EXEMPTION CONTAINED IN  541.601**

CVS's last argument is that Mr. Anani, because he earned more than $100,000 a year, is exempt from overtime pursuant to the "highly compensated" individual exemption contained in 29 C.F.R. § 601.  This argument is easily disposed of.  CVS simply errs when it writes that the salary basis test "is not incorporated under the highly compensated employee exemption."  CVS. Mem. 18.  CVS ignores the plains words of 29 C.F.R. § 601(b)(1) which require, as here relevant, that the $100,000 total annual compensation "must include at least $455 per week paid on a salary or fee basis."  29 C.F.R. § 601(b)(1).  Since there is no argument that Mr. Anani was paid on a fee basis, the exemption thus requires, as does the learned professional exemption, that his weekly $455 pay have been paid on a "salary" basis.  As already discussed, this presents a triable issue of fact and accordingly, CVS's attempt to ignore the plain words of 29 C.F.R. § 601(b)(1) should be rejected.  The issue presented before the Court is whether the salary test is met and that test exists for both the learned professional exemption and for the highly compensated individual exemption.

Indeed, were CVS correct, then "salary basis" language of Section 601(b)(1) would be surplusage since any payments, howsoever paid (salary, bonus, commission, etc.) and totaling $100,000 would suffice.  The purpose of the "highly compensated" exception is not to provide an end-run around other requirements of the FLSA (nor should 29 C.F.R. § 601(b)(1) possibly be construed as doing so).  Rather, its purpose is to set forth for employers a lower hurdle to go over in finding an employee to be exempt under one of the duties-based exemptions.  As the regulation provides, because "[a] high level of compensation is a strong indicator of an employee's exempt status, [the exemption] thus eliminate[es] the need for a detailed analysis of the employee's job duties" and only requires a showing that the employee "customarily and

17

regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee responsibilities…." 29 C.F.R. § 601(c).  Thus, for instance, "[a]n employee may qualify as a highly compensated executive employee, for example, if the employee customarily and regularly directs the work of two or more other employees, even though the employee does not meet all of the other requirements for the executive exemption under § 541.100." *Id.* In other words, the highly paid employee exemption renders proof by the employer of the "primary duty" analysis (which exists for the executive, compensation and professional employee exemptions) unnecessary – simply performing a single duty will suffice. But while 29 C.F.R. § 601 may lower the duties threshold, it does not do away with the "salary basis" requirement, which is literally required on the face of the regulation.

**D.   CVS HAS AGREED TO WITHDRAW ITS CONTENTION RELATING TO THE STATUTE OF LIMITATIONS.**

CVS's brief, also requests, as Point IV, summary judgment on the issue of the statute of limitations for Mr. Anani's claim.  CVS Mem. 18-19.  CVS has agreed with Plaintiffs' counsel to withdraw, at this time, this part of its motion.  Lesser Decl. ¶ 10.

**E.   PLAINTIFF DOES NOT DISPUTE THAT HIS NEW YORK LABOR LAW CLAIMS SHOULD BE DISMISSED.**

As Point I in its brief, CVS argues that Plaintiff's New York Labor Law claims should be dismissed.  Plaintiff does not disagree and his letter to the Court dated August 18, 2010 specifically offered to sign a stipulation to that effect.  While it would have been easier to proceed by stipulation than to have CVS raise this point in the present motion, Plaintiff still does not challenge CVS as to the New York Labor Law Claim and agrees it should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Defendant's motion for summary judgment must be denied in its entirety.

Dated:   November 4, 2010

By: <u>/s/ Seth R. Lesser</u>
      Seth R. Lesser
Jeffrey A. Klafter
Seth R. Lesser
Fran L. Rudich
KLAFTER, OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone:  (914) 934-9200

Bradley I. Berger
BERGER ATTORNEY, P.C.
321 Broadway
New York, New York 10007
Telephone:  (212) 571-1900

*ATTORNEYS FOR PLAINTIFF*

19